# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

**CIVIL ACTION NO. 09-9-DLB**

**ACUITY, A MUTUAL INSURANCE COMPANY**                    **PLAINTIFF**

**vs.**                **MEMORANDUM OPINION AND ORDER**

**KRUMPELMAN BUILDERS, INC.**                            **DEFENDANT**

\*     \*     \*     \*     \*     \*     \*

Plaintiff Acuity, A Mutual Insurance Company ("Acuity"), commenced this action against Defendant Krumpelman Builders, Inc. ("Krumpelman"), seeking a declaratory judgment that it is not required to defend or indemnify Krumpelman in a pending state court action for negligence, breach of contract, and breach of warranty.

This matter is currently before the Court on the parties' cross-motions for summary judgment. (Docs. #20, 21). Both motions have been fully briefed, (Doc. #22, 23, 24, 26), and the matter is now ripe for review. For the reasons set forth below, because a faulty workmanship claim, standing alone, is not an "occurrence" under a commercial general liability policy, Acuity's Motion for Summary Judgment (Doc. #21) is **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2000, D. Boyd and Anna M. Davis ("Davises") contracted with Defendant Krumpelman for a custom built home on Lot #16 Meadow Stable Lane in Richwood, Kentucky. Krumpelman began construction in July 2000 and completed the home in February 2001, whereby the Boone County Building Inspector approved the home

for occupancy. Krumpelman used two subcontractors for the construction of the foundation, Kremer's Excavating Co. ("Kremer's") and S&S Construction Inc. ("S&S"). Kremer's dug the basement and prepared the ground. S&S poured concrete footers that supported the foundation walls and the trench that extended beyond the walls; it also performed the excavation and poured the foundation.

On March 21, 2008, the Davises filed a Complaint against Krumpelman in Kenton Circuit Court, civil action number 08-CI-00904, alleging negligence, breach of contract and breach of warranty. Specifically, the Davises alleged, beginning in September 2001, the house "began experiencing drainage issues, including accumulations of water in the basement of the residence," and they put Krumpelman on notice of such issues. (Doc. #1-2, ¶¶ 12-13). In February 2001, the Davises told Krumpelman about defects in the structure believed to have been caused by "movement and/or settlement of the foundation in excess of what is considered acceptable in the building industry." *Id.* ¶ 14. The Davises also alleged the excessive movement and/or settlement of the foundation was caused by Krumpelman's inadequate excavation, grading, and installation of footers. Krumpelman refused to correct the defects, and the home continued to deteriorate. The Davises asserted the residence then experienced "cracking in the exterior brick veneer, cracking and separation in interior walls and tile, sunken patio and driveway, doors and windows being pushed askew, and leaking." *Id.* ¶ 18. The Davises retained a geotechnical engineer who recommended a remedy that Krumpelman, again, refused to implement.

Acuity issued to Krumpelman a commercial general liability ("CGL") insurance policy, policy number K31009, with effective dates from April 1, 2006 to April 1, 2007. The insurance contract provides:

We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which the insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury* and *property damage* to which this insurance does not apply.

. . .

This insurance applies to *bodily injury* or *property damage* only if:

    (1)    The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the coverage *territory*; [and]

    (2)    The *bodily injury* or *property damage* occurs during the policy period . . . .

. . .

*"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[1]

(Doc. #1-1, 5, 17). Krumpelman notified Acuity of the Davises claim before the lawsuit was filed and also when the action was initiated in Kenton Circuit Court. On June 26, 2007, Acuity advised Krumpelman that it would be handling the matter under a strict reservation of rights since it appeared that the damage was not caused by an "occurrence" under the CGL policy. Thereafter, Acuity initiated this declaration of rights action.[2]

---

[1] The CGL policy also contains multiple exclusions that both Plaintiff and Defendant cite in their motions for summary judgment. However, given that coverage is denied based solely on the definition of "occurrence", it is unnecessary to address the multiple exclusions that, alternatively, may have applied.

[2] The state court action is ongoing. Acuity provided an attorney to defend Krumpelman under a reservation of rights. Recently, Krumpelman filed a third party complaint alleging that subcontractor S&S caused, wholly or in part, the damage to the Davis residence by its own negligence.

3

## II.  ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not a genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The fact that both parties filed summary judgment motions does not alter the standard by which this Court reviews these motions: "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must produce evidence showing that a genuine issue remains, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

It is well settled that the interpretation of insurance contracts is a matter of law to be decided by the court.  *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000).  The contract should be liberally construed and all ambiguous terms

resolved in favor of the insured. *Ky. Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992). However, unambiguous terms "should be interpreted in light of the usage and understanding of the average person." *Stone*, 34 S.W.3d at 811 (citing *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986)).

### B.      Duty to Defend

Under Kentucky law, an insurer's duty to defend is broader than its duty to indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 280 (Ky. 1991) (citing *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984)). "The insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." *Id.* at 279 (citing *O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390, 392 (Ky. 1984)). The determination of whether an insurer has a duty to defend is made by comparing the allegations in the complaint with the terms of the policy. *Id.* (citing *Wolford*, 662 S.W.2d at 838). If the insurer believes a claim is not covered under its policy it may (1) defend the claim under a reservation of rights or (2) refuse to defend the claim. *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005). An insurance company determines whether a defense is required at the beginning of litigation and the outcome makes no difference. *James Graham Brown Found., Inc.*, 814 S.W.2d at 279.

As provided for by law, Acuity chose to defend Krumpelman in the underlying state court action under a strict reservation of rights. Krumpelman asserts that it is entitled to a continued defense on the premise that the purpose of a CGL policy is to provide maximum coverage. Additionally, Krumpelman argues, at this stage in the state proceedings, the facts have not been determined to know whether certain policy exclusions apply or are

ambiguous and, thus, unenforceable.  However, Defendant's argument is misplaced.  The duty to defend is made at the outset of litigation by comparing the allegations in the complaint with the terms of the policy, regardless of the outcome of the underlying action.  For the reasons set forth below, the allegations in the Davises' complaint fall outside the insurance coverage, and, as a matter of law, Krumpelman is not entitled to a continued defense.

**C.     Duty to Indemnify**

Krumpelman is entitled to indemnification if the CGL policy provides coverage for the Davises' claims.  The CGL policy provides coverage for bodily injury or property damage caused by an "occurrence," which is defined as an accident.  In their complaint, the Davises alleged negligence, breach of contract, and breach of warranty claims.  Specifically, they pointed to multiple structural defects in the home Krumpelman built for them, including movement and/or settlement of the foundation.  They believed the defects were caused by Krumpelman's inadequate excavation, grading and installation of footers.  Regardless of the language actually used in the complaint, all of the claims center around Krumpelman's alleged faulty construction of the home.  Krumpelman asserts the defects occurred because of the negligence of one of its subcontractors, S&S, and recently filed a third party complaint against S&S.

In a very recent opinion, the Kentucky Supreme Court addressed whether a homeowner's claim of defective construction against a homebuilder is property damage caused by an "occurrence" under a CGL insurance policy.  *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, No. 2008-SC-000293-DG, 2010 WL 997380 (Ky. Mar. 18, 2010).  The facts of *Cincinnati Ins. Co.* are almost identical to the present case.  Homebuilders brought an

action against the builder alleging serious structural defects as a result of faulty work performed by the builder and/or its subcontractors. *Motorists Mut. Ins. Co. v. Cincinnati Ins. Co.*, No. 2007-CA-000818-MR, 2008 WL 746689 at *1 (Ky. Ct. App. March 21, 2008), *rev'd*, No. 2008-SC-000293-DG, 2010 WL 997380 (Ky. Mar. 18, 2010). The house had "cracks in the drywall and exterior brick walls, defective windows and doors, sagging floors, separation of brick veneer from exterior walls, and leaning walls." *Id.* Construction experts found that subcontractors hired by the builder performed improper framing and foundation work. *Id.*

The Supreme Court held that a claim of faulty workmanship, by itself, is not an "occurrence." *Id.* at *3. The CGL policy in *Motorists Mut. Ins. Co.* had identical language to Krumpelman's policy. More specifically, the CGL policy provided coverage for bodily injury or property damage caused by an "occurrence." 2010 WL 997380 at 4. "Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The Court opined the term "accident" was not ambiguous under these circumstances, nor had it acquired a technical meaning under insurance law, and it was to be given its plain meaning. *Id.* at *6-7 (citing *Fryman ex rel. Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986)). The plain meaning of "accident" involves the doctrine of fortuity, including both intent and control.[3]

---

[3] It is important to mention that the Court distinguished this case from *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633 (Ky. 2007), which both Acuity and Krumpelman cite to for the proposition that faulty construction is an "occurrence" under a CGL policy. The Court notes that *Bituminous* is factually distinguishable from *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.* In *Bituminous*, the contractor improperly demolished someone's entire home instead of just the carport attached to the home. *Bituminous Cas. Corp.*, 240 S.W.3d at 636. The Supreme Court held the improper destruction was an "occurrence" because the damage was "not the plan, design, or intent of the insured." *Cincinnati Ins. Co.*, 2010 WL 997380, at *12 (citing *Bituminous*, 240 S.W.3d at 639). The Court did not go on to address the control aspect of the fortuity doctrine. *Id.*

*Id.* at *7. While certainly the contractor did not intend to build a sub-par house for the homeowners, it was not a "chance event" beyond the contractor's control. *Id.* at *8-10. The builder had control over the construction of the home, "either directly or through the subcontractors it chose." *Id.* at *11. Therefore, the faulty construction of the home cannot be a truly accidental event. *Id.* The Court stated this will "'ensure[ ] that ultimate liability falls to the one who performed the negligent work . . . instead of the insurance carrier. It will also encourage contractors to choose their subcontractors more carefully instead of having to seek indemnification from the subcontractors after their work fails to meet the requirements of the contract.'" *Id.* at *9 (quoting *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33, 37 (S.C. 2005)).

The recent *Motorists Mut. Ins. Co.* case controls the disposition of the parties' cross motions for summary judgment. Because a faulty workmanship claim is not an "occurrence" under the CGL policy, even if the substandard work was performed by a subcontractor, Krumpelman is not entitled to indemnification, and Acuity is entitled to summary judgment in on his complaint for declaratory judgment..

## III. CONCLUSION

Because a claim for faulty workmanship, standing alone, is not an "occurrence" under a CGL policy, Krumpelman is entitled to neither a continued defense nor indemnification from Acuity in its lawsuit with the Davises. Accordingly, for the reasons stated herein,

---

at *12. However, the Court found *Bituminous* did not control the instant case because "the quick destruction of a residence is manifestly . . . different . . . than the protracted improper construction of a residence." *Id.*

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #21) is hereby

**GRANTED**, and Defendant's Motion for Summary Judgment (Doc. #20) is hereby **DENIED**.

This 8th day of April, 2010.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\Covington\2-09-9 MOO MSJs.wpd